IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 07-22219-CIV-MOORE

JOSEPH UMBACH,

    Plaintiff,

v.

MERCATOR MOMENTUM FUND, L.P., M.A.G.
CAPITAL, LLC, and DAVID FIRESTONE,

    Defendants.
_____/

**CLOSED CIVIL CASE**

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION, AND TO COMPEL ARBITRATION

This CAUSE came before the Court upon Defendants' Motion to Dismiss for Improper Venue and Lack of Personal Jurisdiction, and to Compel Arbitration (dkt # 30). A Response (dkt # 37) and a Reply (dkt # 41) to the Motion to Dismiss were filed.

UPON CONSIDERATION of the motions and being otherwise fully advised in the premises, the Court enters the following Order.

**I.  BACKGROUND**

Joseph Umbach ("Plaintiff") filed suit against Mercator Momentum Fund, L.P. ("Fund"), M.A.G. Capital, LLC ("General Partner"), and David Firestone ("Firestone"), (collectively "Defendants"). Plaintiff's Amended Complaint (dkt # 11) alleged eight counts against Defendants resulting from Plaintiff's investment in a hedge fund. Amd. Compl. at 16-23.

In January, 2005, Defendants contacted Plaintiff regarding potential investment in the Fund. Defendants mailed the information and agreements using the U.S. mail from their

headquarters in California to Plaintiff in Florida. Id. at 6-7. The Parties spoke to one another a few times over the ensuing weeks to discuss investment in the California based hedge fund. It appears that the Defendant and Plaintiff each initiated some of these calls. Id.

In April, 2005, in preparation for investment, Plaintiff signed the Fund Subscription Agreement ("Subscription Agreement"). Pl. Resp. Ex. B at 1. The Subscription Agreement is a precursor for investment and warrants that the investor qualifies as "accredited." Id. Accredited status designates that the investor has sufficient assets to invest. Id at 2. The Subscription Agreement also contains a choice of law provision and an arbitration clause designating California as the controlling locus. Id at 5-6.

On April 1, 2005, Plaintiff invested a sum of $4 million into the Fund managed by Defendants. Amd. Compl. at 1. The Fund was governed by a limited partnership agreement ("LP Agreement"). Pl. Resp. Ex. A at 1. Pursuant to the LP Agreement, investors were generally not permitted to redeem their interests in the Fund. Id. at 15. Defendants, however, provided Plaintiff the option of redemption on a quarterly basis with only thirty days prior notice ("Plaintiff's Early Redemption Right"). Amd. Compl. at 2. Defendants used Plaintiff's Early Redemption Right as an inducement to get Plaintiff to invest; previously, Plaintiff had communicated his unwillingness to invest because of the limited right of redemption. Id. On or about April 13, 2005, Defendant mailed Plaintiff a letter confirming the existence of Plaintiff's Early Redemption Right. Id at 8.

On or about June 30, 2005, Plaintiff exercised his Early Redemption Right and redeemed $2 million of his original $4 million investment. Amd. Compl. at 8-9. A little more than a year later, Plaintiff again attempted to exercise his Early Redemption Right. Id. at 9. Plaintiff provided the requisite notice and requested a redemption of $1.5 million of his remaining $2

million investment. Id. The Fund did not issue Plaintiff's requested redemption, but rather requested that Plaintiff delay his receipt. Id. Plaintiff, in Florida, spoke with Defendants, located in California, and agreed to the delay conditioned upon his receipt of his remaining investment in the Fund. Id. Defendants failed to deliver to Plaintiff the balance of his investment, or any of his investment, at the agreed upon date. Id.

Subsequently, in April, 2007, the Fund alerted its investors that it was dissolving and would be liquidating and distributing the proceeds to all investors. Id at 9-10. Plaintiff maintains that he is entitled to the amounts he requested in his Right of Early Redemptions, not his lesser, current pro rata share of the remaining assets. Id at 11.

At present, the Defendants have not addressed the underlying merits of Plaintiff's claim, but move to dismiss for improper venue and lack of personal jurisdiction, and to compel arbitration. As a basis for improper venue and dismissal, Defendants state that Plaintiff is bound by the Subscription Agreement, which contains a mandatory arbitration clause and California forum selection clause. Def. Mot. at 4. Defendants also claim a lack of personal jurisdiction for failure to satisfy both the Florida long-arm statute and due process. Def. Mot. at 6-11.

Plaintiff responds that the LP Agreement, not the Subscription Agreement, controls because his grievance arises from the LP Agreement. Pl. Resp. at 1-4. The LP Agreement permits its signatories to bring their claims outside of the exclusive jurisdiction of the California Courts and does not have a mandatory arbitration provision. Pl. Resp. Ex A. Plaintiff claims that his Early Redemption Right and LP agreements with Defendants, and their alleged breach of those contracts, brings Defendants within the personal jurisdiction of this Court. Pl. Resp. at 9-11.

Defendants further claim that their motion to dismiss should be granted for lack of

3

personal jurisdiction. Def. Mot. at 6-11. Defendants allege that their contacts with Florida are so limited that the parameters of both the long arm statute and due process prohibit this Court from exercising personal jurisdiction over the Defendants. Id. Plaintiff maintains that the breach of his Early Redemption Right and LP agreements, payable in Florida, satisfies the long arm statute and Defendants telephone calls and mailings represent sufficient contacts to satisfy due process. Pl. Resp. at 5-13.

## II. DISCUSSION

Defendants' Motion to Dismiss (dkt # 30) raises two issues that this court will address in turn. First, this Court must make a preliminary determination as to which agreement controls Plaintiff's cause of action. Second, if the LP Agreement is found to control, this Court must ensure that it retains personal jurisdiction over the Defendants.

### A. LP Agreement & Subscription Agreement

Plaintiff maintains that his cause of action arises from the LP Agreement, and; regardless, that the LP Agreement contradicts and supersedes the Subscription Agreement. For the three reasons articulated below, the LP Agreement controls.[1]

First, as Plaintiff's note, where all parties have signed two contracts, the most recently executed contract supersedes the earlier executed contract. *See* Frangipani v. Boecker, 64 Cal. App. 4th 860, 863, 75 Cal. Rptr. 2d 407, 409 (Cal. App. 4th Dist. 1998). The Plaintiff signed

---

[1] The Court need not address Defendants' claim regarding inconsistencies between the forum selection clause and arbitration provision because this Court does not find them inconsistent. This Court, rather, finds that the arbitration provision applies to the Subscription Agreement and the consent to jurisdiction clause applies to the LP Agreement. Therefore, the agreements are not read in conjunction, but as two separate agreements each with their own provisions.

4

the Subscription Agreement on April 13, 2005. The Amended and Restated LP Agreement at issue is dated July 17, 2006. The Subscription Agreement does make reference to "carefully reviewed the Limited Partnership Agreement." Pl. Resp. Ex. B at 6. The limited partnership agreement at issue here, however, is the Amended and Restated Limited Partnership Agreement dated July 17, 2006. The Subscription Agreement's reference to an earlier limited partnership agreement cannot limit the later Amended and Restated LP Agreement because Plaintiff would not have been able to "carefully review" a limited partnership agreement that was not even in existence at the time he signed the Subscription Agreement. Therefore, the LP Agreement supersedes the Subscription Agreement. Id.

Second, the Subscription Agreement's sections pertaining to Governing Law and Arbitration appear only to relate to the Subscription Agreement itself. The Subscription Agreement states "*[t]his Subscription Agreement* will be governed by...the laws of the state of California, and...any dispute as to this matter must be addressed through binding arbitration." *See* Pl. Resp. Ex. B at 5-6 [emphasis added]. The Subscription Agreement continues "by agreeing to arbitrate any disputes or controversies under *this Agreement*, the undersigned is waiving the right to seek remedies in Court." *See* Pl. Resp. Ex B at 6. Admittedly the Subscription Agreement is not completely clear, but the arbitration clause language, given its plain meaning, and construed against the drafter, indicates that the arbitration clause only relates to the Subscription Agreement. *See* Arriaga v. Florida Pacific Farms, L.L.C., 305 F.3d 1228, (holding "an ambiguous term is to be construed against the drafter."); *See also* Wallis v. Princess Cruises, 306 F.3d 827, 838 (9th Cir. 2002) (holding "opaqueness like ambiguity, obscures the meaning of an instrument that 'in cases of doubt...it is to be taken against the party that drew it.'" (internal citations omitted)).

5

Finally, Plaintiff's claims stem from the LP Agreement. Plaintiff's entire claim results from Defendants' alleged failure to honor its Early Redemption Right and LP agreements. In the Amended Complaint (dkt # 11), Plaintiff specifically alleges breach of the LP Agreement in counts III and VII, respectively. Amd. Compl. at 17, 21. In counts III and VII, Plaintiff claims that Defendants violated both their fiduciary duties and rights set forth in the LP Agreement. Id. Further, the LP Agreement contains the provisions relating to redemption, which underlie this cause of action, not the Subscription Agreement. Pl. Resp. Ex A at 15. Since Plaintiff's claims arise from the LP Agreement, the LP Agreement's provision regarding venue must control.

The LP Agreement supersedes the Subscription Agreement; therefore, venue is not improper in the Southern District of Florida based solely on the Subscription Agreement's forum selection clause. Likewise the arbitration provision, contained in the Subscription Agreement, does not apply to Plaintiff's current cause of action, which arises from the LP Agreement.

**B.     Personal Jurisdiction**

When considering a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by defendant's affidavits. See Corneal v. CF Hosting, Inc., 187 F. Supp. 2d 1372, 1373 (S.D. Fla. 2001); Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988); Venetian Salami Co. v. J.S. Parthenais, 554 So.2d 499, 502 (Fla. 1989). Once the plaintiff pleads sufficient material facts to form a basis for personal jurisdiction, the burden shifts to the defendant to challenge the plaintiff's allegations by affidavits or other pleadings. See Future Technology Today, Inc. v. OSF Healthcare Systems, 218 F.3d 1247, 1249 (11th Cir. 2000); Venetian Salami Co., 554 So. 2d at 502. When the nonresident defendant meets this burden, the plaintiff must substantiate the jurisdictional allegations in its complaint by affidavits or other competent proof, and may not

merely rely upon the factual allegations set forth in the complaint. See Future Technology Today, Inc., 218 F.3d at 1249; Venetian Salami Co., 554 So. 2d at 502.

The court's determination of whether personal jurisdiction over a nonresident defendant exists requires a two-part analysis. D.W. Mercer, Inc. v. Valley Fresh Produce, Inc., 146 F. Supp. 2d 1274, 1276 (M.D. Fla. 2001). First, the Court must consider the jurisdictional question under the Florida state long-arm statute. See id.; see also Fla. Stat. § 48.193(1). If there is a basis for the assertion of personal jurisdiction under the state statute, the Court will next determine "whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice." D.W. Mercer, Inc., 146 F. Supp. 2d at 1276 (citing Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996)). Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a non-resident defendant. See Robinson, 74 F.3d at 256.

### 1. Florida's Long-Arm Statute

"Because the reach of the Florida long-arm statute is a question of Florida state law, federal courts are required to construe it as would the Florida Supreme Court." Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 890-91 (citing Moore v. Lindsey, 662 F.2d 354, 357-58 (5th Cir. 1981); Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228, 1232 (5th Cir.1973)). Furthermore, the Florida long-arm statute is to be strictly construed. Id. The Plaintiff bears the burden of proving personal jurisdiction. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996).

Here, Plaintiff asserts multiple bases for the Court to exercise its long-arm jurisdiction over Defendants. Plaintiff alleges the following as grounds for long arm jurisdiction: committing

7

a tortious act within Florida, conducting business in Florida, breach of contract in Florida, and substantial and not isolated activity in Florida. *See* Pl. Resp. at 5-11. This Court finds that it does have jurisdiction over the non-resident Defendants pursuant to the long-arm statute for breach of contract by a non-resident. *See* Fla. Stat. § 48.193(1)(g). Consequently, the Court's analysis will focus on § 48.193(1)(g) of the long-arm statute.

The Florida long-arm statute specifically provides for personal jurisdiction over a non-resident defendant where the defendant breached a contract with a Florida resident. *See* Fla. Stat. § 48.193(1)(g). The long-arm provision encompassing breach of contract is met when the non-resident defendant fails to pay a contractual debt where payment is due to be made in Florida. *See* Global Satellite Communication Co., v. Sudline, 849 So.2d 466, 468 (Fla. 4th DCA 2003).

Plaintiff asserts that Defendants have failed to pay the contractual debt resulting from their alleged breach of the Right to Early Redemption and LP agreements. *See* Pl. Resp. at 10. The Early Redemption agreement was silent regarding place of payment. Plaintiff had informally requested that the funds be sent to his bank account in New York, but has since demanded receipt of funds in Florida. Id. Where the contract is silent as to the place of payment, the place of payment is recognized as the creditor's state of residence. *See* First National Bank of Kissimmee v. Dunham, 342 So.2d 1021, 1022 (Fla. 4th DCA 1977). Defendants have allegedly breached the Early Redemption and LP agreements, which are due and now payable in Florida, Plaintiff's home state of residence.

Therefore, pursuant to § 48.193(1)(g), this Court does have long-arm jurisdiction over the non-resident Defendants premised upon Defendants failure to pay a contractual debt where payment is due in Florida. *See* Global Satellite Communication Co., 849 So.2d at 468.

### 2. Due Process Analysis

Given the Court's determination that Defendants are encompassed by Florida's long-arm statute, the Court must now determine whether personal jurisdiction over the Defendants comports with due process.

The due process inquiry is two-fold. First, the Court must establish whether Defendants had the requisite minimum contacts in the State of Florida. *See* Sculptchair, Inc. v. Century Arts, LTD., 94 F.3d 623, 630 (11th Cir. 1996). Next, the Court must determine if finding jurisdiction over the Defendants would violate "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310 (1945).

#### a. Minimum Contacts

The minimum contacts analysis has three separate inquiries. "First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum state must be such that she should reasonably anticipate being haled into court there." Sculptchair, 94 F. 3d at 631.

Here, Defendants' contacts with the forum state of Florida do relate to the Plaintiff's cause of action. Plaintiff alleges a breach of both his Early Redemption Right agreement and the LP Agreement, and Plaintiff's entitlement to proceeds are payable in Florida. Further, Defendant sent the agreements to Plaintiff, in Florida, for Plaintiff to review and sign. Defendant also telephoned Plaintiff in Florida regarding investment in the Fund and execution of the agreements. Defendants' contacts with the forum state of Florida do relate to Plaintiff's cause of action.

Defendants' contacts, however, do not involve purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Id. The minimum contacts requirement is not met where an individual from Florida simply contracts with a non-resident. *See* Christus St. Joseph's Health Systems v. Witt Biomedical Corp., 805 So. 2d 1050, 1053-54 (Fla. 5th DCA 2002). Rather, the future dealings, terms of the contract, and what the parties contemplated regarding the contract must be evaluated to determine whether minimum contacts and purposeful availment have been satisfied. *See* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). In this case, the two agreements signed by the Parties did not contemplate a future or involved relationship within the State of Florida. The Subscription Agreement related to an investment with a California hedge fund and the LP Agreement defined the rights between partners in a limited partnership also located in California. The terms of the LP Agreement, which is the agreement at issue, were established under the laws of California. *See* Pl. Resp. Ex. A at 1. The LP Agreement does recognize jurisdiction beyond California, but that does not automatically create the necessary minimum contacts and purposeful availment with the state of Florida. In fact, despite its poor drafting, the LP Agreement specifically refers to the laws and courts of California. Id at 25-26. Nowhere in the terms of the LP Agreement does it remotely refer to invoking the benefits and protections of Florida law. The LP Agreement also does not provide any indication that the Parties contemplated Florida as a possible judicial forum. The LP Agreement by itself fails to meet the second prong of the minimum contacts test.

Looking at Defendants' additional contacts with the State of Florida, mainly telephone calls and a few mailings to a Florida resident, this Court also finds that Defendants' other contacts are not sufficient to rise to a level of purposeful availment. An isolated transaction,

consisting of telephone calls and mailings, regarding an investment in California, not Florida, is not enough for a finding of purposeful availment. See Hartcourt, 817 So. 2d at 1071.

Third, Defendants' phone calls and mailings, in the form of hedge fund solicitations, and a limited partnership agreement signatory who is a resident of Florida, do not make it reasonably foreseeable that the defendant should anticipate being haled into court in Florida. Unlike Sculptchair, where the Court found that marketing activities within Florida allow a defendant to reasonably foresee being haled into court, here, Defendants' solicitations originated in California, were not widespread, and did not involve sending personal representatives to Florida. 94 F.3d at 631. Defendants might have been able to foresee an injury, such as the current breach of contract, but foreseeability of an injury is not sufficient to meet the minimum contacts requirements. See Lee's Famous Recipes, Inc., v. Fam-Res, Inc., WL 1451808 (N.D. Fla. 2007); World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980). Based upon Defendants' limited contacts with the state of Florida, Defendants could not reasonably foresee being haled into court over a limited partnership agreement for an investment and partnership located in California.

Despite Defendants alleged breach of contract with a sum payable due in Florida, Defendants do not have the requisite minimum contacts to allow this Court to exercise personal jurisdiction over the Defendants in compliance with due process.

### b. Traditional Notions of Fair Play and Substantial Justice

This Court, having found that Defendants do not meet the minimum contacts prong, concludes that this Court does not have personal jurisdiction over defendants. For completeness of the proceeding, this Court will also analyze the second prong of the due process analysis,

11

which Plaintiff's cause of action also fails to satisfy.

The Court's next determination is whether the exercise of personal jurisdiction over Defendants complies with traditional notions of fair play and substantial justice. International Shoe, 326 U.S. at 320. The factors that the court considers when making a fair play and substantial justice analysis are "the burden on the defendant, the interests of the forum..., and the plaintiff's interest in obtaining relief." Sculptchair, F.3d at 631 (quoting Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 113 (1987). The burden on the Defendants to litigate in Florida is above average given the geographic distance between Florida and California. This geographic distance, however, does not in and of itself violate fair play and substantial justice. It is the remaining two fair play and substantial justice factors that make the current suit violative of due process.

Florida, as a forum, has marginal interest in adjudicating a breach of contract whose only connection to Florida is that one of its signatories lives there and might be entitled to disbursement of funds inside the state. The Defendants, their agreements, and their investments are all managed and organized in California, and largely under California law. It is the forum of California, not Florida, that has a substantial interest in overseeing and adjudicating its partnerships and investment funds. It is California, not Florida, that has the "obvious interest in stamping out the type of nefarious economic chicanery alleged in [Plaintiff's] complaint." Sculptchair, F.3d at 632. Further, since minimum contacts were not established, Plaintiff can not as heavily rely on the "the interests of the plaintiff... [to] justify...the serious burdens placed on the [] defendant." Asahi, 480 U.S. at 114.

For the foregoing reasons, this Court's exercise of personal jurisdiction over Defendants violates due process. The Defendants do not have the requisite minimum contacts and the

exercise of jurisdiction does not comport with traditional notions of fair play or substantial justice.

### III. CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss for Improper Venue and Lack of Personal Jurisdiction, and to Compel Arbitration (dkt # 30) is GRANTED IN PART. It is further

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED. It is further

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss for Improper Venue and to Compel Arbitration is DENIED. It is finally

ORDERED AND ADJUDGED that Plaintiff's Amended Complaint is hereby DISMISSED WITH PREJUDICE. The Clerk of Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 5 day of October, 2007.

**K. MICHAEL MOORE**

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: Magistrate Barry L. Garber
All counsel of record